Filed 7/8/14  Carmona v. Preston Waters Corp. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BRENDA CARMONA et al., | B251637 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. BC490190) |
| PRESTON WATERS CORPORATION et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed in part and reversed in part, with directions.

Egerman Law Group and Lee A. Egerman for Plaintiffs and Appellants.

No Reply Brief for Defendants and Respondents.

The plaintiffs Brenda Carmona et al.[1] appeal from the trial court's denial of their request for entry of default judgment against the defendants Preston Waters Corporation (PWC), Preston Waters Entertainment, Inc. (PW Entertainment), and Nicholas Mussolini.  The plaintiffs contend that default judgment should have been entered because they had presented sufficient evidence supporting their breach of contract causes of action.  We reverse, in part, on the ground that the trial court improperly required the plaintiffs to present evidence of the defendants' liability in support of the request for default judgment.  The trial court should have evaluated whether the plaintiffs had presented prima facie evidence of damages as to all properly pled causes of action in the complaint.  However, we affirm, in part, on the ground that the plaintiffs sought default judgment based on evidence that directly contradicted the complaint's allegations establishing liability.

### FACTUAL AND PROCEDURAL BACKGROUND

1.    *The Complaint*

On August 14, 2012, the plaintiffs filed a complaint against the defendants with multiple causes of action for breach of contract, among other causes of action.[2]  The complaint's first cause of action for breach of contract alleged that, on February 15, 2012, Carmona entered into a written contract with PWC whereby PWC agreed to employ Carmona as "President of Film and Television" and pay her over $2 million for

---

[1]    The plaintiffs in this action are Brenda Carmona, Bennett McCord, Charles Wachtel, Liron Artzi, Jesse McCullum, Max Lugavere, and Alexcy Aranguren.

[2]    This appeal only concerns the plaintiffs' breach of contract causes of action.

2

"past due" debts as well as $300,000 in annual salary and a 3.5% commission on any film project funded by PWC.

The contract was attached to the complaint and provided that the contract's "terms" would "commence" when PWC "ha[d] in its corporate accounts . . . in excess of $10,000,000.00," and that the "past due" debts would be paid "according to [] time frames" commencing on the date of the "compan[y's] capital accumulation." The complaint further alleged that the defendants had "obtained funding in excess of Fifty Million Dollars" and that "[p]ursuant to the [] written contract, Carmona became President of Film and Television for PWC" at some unspecified time. PWC allegedly breached the contract by failing to pay Carmona the amounts due under the contract and by terminating her employment on June 1, 2012. The cause of action was alleged against all of the defendants and "each of the Defendants" was alleged to be "an alter ego of each of the other Defendants."

The complaint also alleged a cause of action for breach of oral contract based on two oral contracts between Carmona and PWC: (1) in November 2011, "PWC hired Carmona to do work on behalf of the PWC and agreed to compensate Carmona for that work," and (2) in February 2012, "PWC and Carmona entered into a second oral agreement . . . containing the same terms as the [] Written Contract, except that the obligations PWC owed Carmona were not conditional." PWC allegedly breached these agreements by failing to pay Carmona amounts owed under these contracts, and by terminating her employment.

3

With respect to the other plaintiffs (co-employee plaintiffs), the complaint alleged causes of action for breach of written contract and breach of oral contract based on their respective contracts with PW Entertainment. Each co-employee plaintiff allegedly entered into written employment contracts with PW Entertainment. The written contracts were attached to the complaint and each provided that the co-employee plaintiffs could be terminated without cause. Each agreement was signed by Carmona in her capacity as a representative of PW Entertainment. PW Entertainment also allegedly entered into oral contracts "containing the same terms" as those written contracts with the additional promise that the co-employee plaintiffs would not be terminated "except for cause." PW Entertainment allegedly breached these written and oral agreements by failing to pay "amounts owed" under the contracts and terminating the employment of the co-employee plaintiffs in June 2012.

2. *The Defendants' Default*

The defendants were served with the complaint on August 21, 2012. Mussolini answered on September 21, 2012, but his answer was later "voided" for nonpayment of fees. On October 11, 2012, default was entered against all of the defendants. On April 15, 2013, the plaintiffs requested that the trial court enter default judgment against the corporate defendants, and Mussolini as the alter ego of those corporations, with respect to the breach of contract causes of action.

In support of this request, the plaintiffs submitted their own declarations, copies of each of the written contracts, and additional evidence. In Carmona's declaration, she stated that she, in fact, had not become "President of the Television & Film Division of

4

PWC," but instead her contract had been "modified" and she had been appointed president of PW Entertainment. Carmona further stated in her declaration that "all claims that PWC had secured funding . . . are false."

3.     *The Trial Court Dismissed the Case*

On June 25, 2013, the trial court denied the plaintiffs' request for default judgment on the following grounds: (1) "the evidence submitted by plaintiffs shows that Carmona never had a written contract with PWC"; (2) Carmona's written employment contract only "commence[d] on 'the date of capital accumulation by the company' . . . 'in excess of $10,000,000.00 USD' " and there was no evidence PWC had ever raised this capital; (3) Carmona "did not have the authority to enter into employment contracts, purportedly on behalf of PWC and/or PW [Entertainment], with the other plaintiffs"; (4) the plaintiffs' breach of oral contract claims fail because the plaintiffs did not provide "admissible evidence . . . on these claims;" and (5) "the claim that Mussolini is the alter ego of the corporate entities is not supported by competent evidence." The plaintiffs timely appealed.

### *CONTENTIONS*

The plaintiffs contend that the trial court erred in denying their request for default judgment because the evidence established that (1) Carmona had a written contract with PWC, (2) the $10 million "capital accumulation" condition to Carmona's employment contract had been waived by the defendants, (3) Carmona had the authority to enter into employment contracts on behalf of PW Entertainment, and (4) Mussolini was the alter ego of the corporate defendants.

5

## DISCUSSION

1. *Applicable Law*

" '*[J]udgment by default* is said to "confess" the material facts alleged by the plaintiff, i.e., the defendant's failure to answer has the same effect as an express admission of the matters well pleaded in the complaint. . . . [Citation.]' " (*Steven M. Garber & Associates v. Eskandarian* (2007) 150 Cal.App.4th 813, 823.) "Because the default *confesses* those properly pleaded facts, a plaintiff has no responsibility to provide the court with sufficient evidence to prove them—they are treated as true for purposes of obtaining a default judgment. [Citation.]" (*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 281.) "And if the well-pleaded allegations of the complaint do not state any proper cause of action, the default judgment in the plaintiff's favor cannot stand." (*Id.* at p. 282; *Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 829 [a default judgment cannot be based on a complaint that fails to state a cause of action against the defaulting party.])

Accordingly, where a cause of action is stated in the complaint, the plaintiff need not prove liability of a defaulting defendant. (*Ostling v. Loring* (1994) 27 Cal.App.4th 1731, 1745 (*Ostling*).) However, the plaintiff must prove the amount of damages and is required to present evidence establishing a prima facie case of those damages. (*Johnson v. Stanhiser* (1999) 72 Cal.App.4th 357, 361.) The trial court, in turn, must hear the evidence offered by the plaintiff and render judgment " 'in [its] favor for such sum, not exceeding the amount stated in the complaint, or for such relief, not exceeding that

6

demanded in the complaint, as appears from the evidence to be just. [Citations.]' " (*Id.* at p. 362.)

2.     *The Trial Court Erred in Requiring the Plaintiffs to Prove Liability*

Here, the trial court improperly required the plaintiffs to present evidence of the defendants' liability in support of the request for default judgment. As stated above, a defendant who defaults admits the truth of properly pled causes of action in the complaint and no further proof of liability with respect to those claims is required. Accordingly, to the extent the plaintiffs properly pled certain causes of action, the trial court should have evaluated whether the plaintiffs had presented a prima facie case on the issue of damages as to those claims. However, in doing so, the trial court was not required to ignore evidence volunteered by the plaintiffs that directly contradicted allegations in the complaint.

a.     *The Breach of Written Contract Cause of Action With Respect to Carmona*

The complaint adequately alleges facts stating a cause of action for breach of contract with respect to the written contract between PWC and Carmona. "A cause of action for breach of contract requires pleading of a contract, plaintiff's performance or excuse for failure to perform, defendant's breach and damage to plaintiff resulting therefrom. [Citation.]" (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1489.) " ' "Ordinarily, a written contract is sufficiently pleaded if it is set out in full or its terms alleged according to their legal effect. . . . " ' [Citations.]" (*Beck v. American Health Group Internat., Inc.* (1989) 211 Cal.App.3d 1555, 1561.)

7

Here, the complaint alleges that (1) Carmona entered into a written contract with PWC for employment, (2) Carmona performed all of her obligations under the contract or was excused from performance, (3) PWC breached the contract by terminating her employment and failing to pay her amounts owed under the contract after she "became President of Film and Television for PWC," and (4) Carmona was damaged as a result of these breaches. In addition, the terms of the written contract were sufficiently set forth as the contract was attached to the complaint. Although the written contract provided that it would only go into effect once PWC obtained in excess of $10 million, it was reasonable to infer that this condition had been satisfied from the complaint's allegations that the defendants had "obtained funding in excess of Fifty Million Dollars" and Carmona had begun her employment under the contract. Accordingly, these allegations were sufficient to state a cause of action for breach of written contract.

However, in support of the request for default judgment, the plaintiffs submitted a declaration by Carmona directly contradicting certain of these allegations. In her declaration, Carmona stated that she had not, in fact, ever been employed as PWC's President of Film and Television, and that PWC had never obtained funding. As Carmona had never been employed pursuant to the written contract, PWC could not have breached the contract by terminating her employment and failing to pay her salary. In addition, as PWC had never obtained the "capital accumulation" specified in the contract, its payment obligations were never triggered. Instead, the plaintiffs argued that Mussolini waived the "capital accumulation" condition to this written contract. However, the complaint alleged facts showing that this condition had been fulfilled. In

8

order to rely on the argument that this condition had been waived, the plaintiffs should have amended their complaint to allege this.

Although by defaulting, the defendants admitted the allegations in this properly pled cause of action, the plaintiffs sought to prove a *different* claim at the default hearing. Their attempt to rely on argument and evidence directly at odds with the complaint's allegations constituted a "de facto amendment" to the complaint. (*Jackson v. Bank of America* (1986) 188 Cal.App.3d 375, 390 (*Jackson*) [holding that the plaintiff's argument and proof at the default hearing showing that he had incurred damages *after* the complaint had been filed through the defendant's sale of bonds, constituted a de facto amendment to the complaint that entitled the defendant to be served anew and then to answer].) "A material amendment to the complaint opens a default because it permits the plaintiff to prove matters not in issue when the default was taken, which 'would materially affect the defendant's decision not to contest the action . . . . ' [Citation.] . . . Unless the plaintiff properly obtains an amendment of his pleading, the defaulting defendant is not subject to this unfair prospect." (*Ostling, supra,* 27 Cal.App.4th at p. 1744.) (Emphasis added.)

Here, the de facto amendment to the complaint – alleging that PWC had never been funded and Carmona had never been employed in the position provided for by the written contract – was material as these new allegations undercut the basis for PWC's liability with respect to Carmona's breach of written contract cause of action. Accordingly, the plaintiffs should have formally amended their pleading (and served the defendants with it) prior to seeking default judgment based on these allegations.

9

The *Jackson* court's holding that a plaintiff that makes arguments at the default hearing based on events that occurred after the complaint had been filed effects a "de facto amendment" to the complaint has been criticized for "impl[ying] that immaterial evidence and inappropriate argument at a default judgment hearing requires setting aside a properly obtained default." (*Ostling, supra,* 27 Cal.App.4th at p. 1744.) According to the *Ostling* court, "[i]f the plaintiff wholly departs from the existing complaint at a hearing on damages, beyond the limitations of the doctrine of curable variance, the trial court should hew to the complaint. [Citation.]" (*Id*. at p. 1745.)

However, the case here is distinguishable from *Jackson*, and *Ostling's* criticism of *Jackson* does not apply. In *Jackson*, "the complaint fail[ed] to state a cause of action" as no damages were adequately alleged, and the plaintiff attempted to remedy that error by providing evidence as to damages that occurred only after the complaint had been filed. (*Id.* at p. 1746.) The proper remedy in this situation, according to the *Ostling* court, was to "hew to the complaint," and "deny relief or limit relief to that which is appropriate considering only the evidence which is within this pale." (*Id.* at p. 1745.) The *Ostling* court's reasoning was based on the principle that "[p]reserving the default advances the public interest in the avoidance of unwarranted contested trials of matters in which a default has lawfully been taken after the time to set aside the default has passed." (*Id.* at p. 1747.)

However, unlike in *Jackson*, the complaint in this case *did* state a cause of action for breach of written contract with respect to Carmona. The plaintiffs' argument and evidence at the default hearing directly contradicted key allegations in this properly pled

10

claim. In such a scenario, the trial court should not "hew to the complaint" as doing so would support the fiction that the complaint's allegations were true, when the plaintiff has already admitted they are not. Under these circumstances, "preserving the default" would lead to an inequitable result, therefore, default judgment on the original allegations is properly denied.

          b.    *The Breach of Oral Contract Cause of Action*
                 *With Respect to Carmona*

The plaintiffs' cause of action for breach of oral contract with respect to contracts between Carmona and PWC is stated in conclusory terms and fails to allege facts sufficient to state this cause of action. " 'Under California law, a contract will be enforced if it is sufficiently definite (and this is a question of law) for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached.' [Citation.] . . . 'The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.' [Citations.] But '[if] . . . a supposed "contract" does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, there is no contract.' [Citation.]" (*Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 209.)

Here, the complaint alleges first that PWC and Carmona "entered into an oral employment agreement" in November 2011, pursuant to which "PWC hired Carmona to do work on behalf of [] PWC and agreed to compensate Carmona for that work." PWC

11

and Carmona are also alleged to have entered into a second oral agreement, one that "contain[ed] the same terms as the [] Written Contract, except that the obligations PWC owed Carmona were not conditional . . . . "

These allegations do not set forth sufficient details regarding the parties' obligations under these agreements. With respect to the first oral agreement, the complaint does not allege what kind of work Carmona agreed to perform for PWC, how much PWC agreed to pay Carmona for this work, or when those payments would be made. With respect to the second oral agreement, the complaint's allegation that this agreement contained the terms of the written contract "except" that PWC's "obligations" "were not conditional" is excessively vague. There are multiple conditions in the contract – including the condition that commissions would only be paid once projects were funded – and it is unclear which of these this allegation refers to. In addition, even if, as the plaintiffs argue, this refers to the "capital accumulation" condition, this renders certain terms of the contract unclear: many of PWC's payments to Carmona were to be disbursed according to "time frames" running from when the company received the "capital accumulation," thus, it is unclear when those payments became due under the non-conditional oral agreement.

Accordingly, the complaint did not allege facts stating a cause of action for breach of Carmona's alleged oral contracts with PWC. Furthermore, as stated above, although the complaint adequately alleged that PWC breached the written contract with Carmona – or on an oral contract with the same terms – allegations in support of those

12

causes of action were directly contradicted by evidence later submitted by the plaintiffs to the court. Therefore, default judgment on this cause of action would have been improper.

           c.       *The Co-Employee Plaintiffs' Causes of Action for*
                  *Breach of Written Contract*

The complaint, however, does adequately allege causes of action for breach of written contract with respect to the claims of the co-employee plaintiffs. These causes of action allege that (1) those plaintiffs each entered into individual contracts for employment with PW Entertainment, (2) PW Entertainment breached those contracts by "failing to pay amounts owed" and terminating their employment, (3) the co-employee plaintiffs performed their obligations under the contracts or were excused from performance, and (4) the co-employee plaintiffs suffered damages as a result. The terms of the written contracts were adequately set forth as these agreements were attached to the complaint.

These allegations were sufficient to state a cause of action for breach of contract, at least with respect to PW Entertainment's failure to pay the plaintiffs their salary for work performed. However, the written contracts provided that PW Entertainment could terminate these plaintiffs without cause, therefore, the complaint did not allege facts showing that PW Entertainment had breached those contracts by terminating the co-employee plaintiffs' employment.

In support of their request for default judgment, the co-employee plaintiffs each submitted declarations stating that PW Entertainment failed to pay them any amount for

13

the work they performed. At that point, the trial court should have evaluated whether a prima facie case for damages had been made. The trial court's analysis of whether the evidence was sufficient to establish that Carmona had authority to enter into the employment contracts as a representative of PW Entertainment was improper. By defaulting to the complaint's properly pled causes of actions for breach of written contract, PW Entertainment admitted that it had entered into the written contracts with the co-employee plaintiffs.

d. *The Co-Employee Plaintiffs' Causes of Action for Breach of Oral Contract*

The complaint also adequately alleged causes of action for breach of oral contract between the co-employee plaintiffs and PW Entertainment. The complaint alleged that (1) they each had entered into respective oral agreements with PW Entertainment "containing the same terms" as their respective written contracts with the additional promise that the co-employee plaintiffs would *not* be terminated "except for cause," (2) the co-employee plaintiffs timely performed their contractual obligations or were excused from performance, (3) PW Entertainment breached these oral contracts by "failing to pay the amounts owed" and terminating the co-employee plaintiffs' employment in June 2012, and (4) they suffered damages as a result.

Although the trial court found that the plaintiffs had not provided "admissible evidence" of the "nature of" these oral contracts, their terms or duration, PW Entertainment had already admitted the existence of valid oral agreements with the co-employee plaintiffs by defaulting to these properly pled causes of action.

14

Accordingly, the trial court erred in concluding that the plaintiffs could not "prevail on these claims," and in failing to evaluate whether the plaintiffs had provided prima facie evidence of damages.[3]

e. *The Claim for Alter Ego Liability*

With respect to the plaintiffs' claim for alter ego liability, the complaint alleges only that "each of the Defendants was an alter ego of each of the other Defendants." " 'The allegation that a corporation is the *alter ego* of [] individual[s] is insufficient to justify the court in disregarding the corporate entity in the absence of allegations of facts from which it appears that justice cannot otherwise be accomplished. . . . ' [Citations.] [¶] The rule is firmly settled that no reliance can be had on th[e] [alter ego] theory in the absence of *pleading* that recognition of the corporate entity would sanction a fraud or promote injustice. [Citations.]" (*Meadows v. Emett & Chandler* (1950) 99 Cal.App.2d 496, 498-499.) Here, the bare allegation that the defendants were alter egos of each other without supporting facts showing that it would be equitable to disregard PWC's and PW Entertainment's corporate status, did not meet these requirements. Therefore, the complaint did not allege facts showing that Mussolini was

---

**3** The complaint also alleged causes of action for "breach of implied-in-fact contract" that are identical to the causes of action for breach of oral contract except that these causes of action refer to "implied-in-fact" rather than "oral" agreements. However, the complaint does not allege any facts as to conduct by the corporate defendants' representatives that allegedly established these contracts, and therefore, does not succeed in stating a cause of action based on this theory. (*Donahue v. United Artists Corp.* (1969) 2 Cal.App.3d 794, 808 [in an implied-in-fact contract, "the promise is not expressed in words but is implied from the promisor's conduct."])

15

the alter ego of the corporate defendants, and default judgment based on this theory would have been improper.

*DISPOSITION*

That portion of the judgment ordering dismissal of the co-employee plaintiffs'

causes of action for breach of written and oral contracts is reversed.  In all other respects

the judgment is affirmed.  Upon remand, the trial court is directed to reconsider the

issue of damages allegedly sustained by the co-employee plaintiffs in light of the views

expressed in this opinion, and to enter judgment in accordance with its findings on such

evidence as to damages as may be presented by the co-employee plaintiffs.  The

co-employee plaintiffs are to recover their costs on appeal.  The plaintiff Carmona shall

not recover her costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



CROSKEY, Acting P. J.

WE CONCUR:



KITCHING, J.



ALDRICH, J.

17